**FILED & ENTERED**

**JAN 14 2015**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY **HANDY**    DEPUTY CLERK

# NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA BARBARA DIVISION

| | |
|---|---|
| In re: | Case No. 9:13-bk-10563-PC |
| UNDERGROUND ENERGY, INC., a Delaware corporation, | Chapter 11 |
| | **MEMORANDUM DECISION** |
| | Date:   December 10, 2014 |
| | Time:  9:30 a.m. |
| | Place:  United States Bankruptcy Court |
| | Courtroom # 201 |
| Debtor. | 1415 State Street |
| | Santa Barbara, CA  93101 |

Before the court is the First and Final Application of Cooley LLP for Compensation and Reimbursement of Expenses as Attorneys for the Official Committee of Unsecured Creditors ("Application").  Cooley LLP ("Cooley"), former counsel to the Official Committee of Unsecured Creditors ("Committee"), seeks final allowance of $768,771.20 in attorneys' fees, plus $19,301.22 in expenses, for a total of $788,072.42, for the period of April 29, 2013 through December 10, 2014.[1]  Underground Energy, Inc. ("Debtor"), the Committee, and the United

---

[1]  The final compensation sought in the Application includes "$25,000, estimated to be incurred in connection with the preparation of [the] Final Fee Application and litigation and hearing thereon."  Application, 2:n.8.  On December 24, 2014, Cooley filed a Supplemental Declaration of Ali M.M. Mojdehi in Support of First and Final Application of Cooley LLP for Compensation and Reimbursement of Expenses as Attorneys for the Official Committee of Unsecured Creditors

States trustee ("UST") object to allowance and payment of the fees and expenses sought in the

Application.  Having considered the Application and objections thereto, the evidentiary record,

and arguments of counsel, the court will sustain, in part, and overrule, in part, the objections to

the Application and allow as final compensation the sum of $747,913.82 in reasonable attorneys'

fees, plus $16,272.87 in expenses, for a total of $764,186.69, based on the following findings of

fact and conclusions of law pursuant to F.R.Civ.P. 52(a),[2] as incorporated into FRBP 7052 and

applied to contested matters by FRBP 9014(c).[3]

---

[Dkt. # 786] ("Supplemental Declaration"), seeking an additional award of $57,393.80 in attorneys' fees for 113.40 hours of legal services rendered at a blended hourly rate of $506.12 between November 4, 2014 and December 10, 2014, in connection with preparation of the Application, responding to objections thereto, and attending the hearing thereon.

[2]  Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005).  "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("F.R.Civ.P.").  "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR").

[3]  In making its findings and conclusions, the court has considered the following documents:  (1) Application [Dkt. # 722]; (2) Declaration of Ali M.M. Mojdehi in Support of First and Final Application of Cooley LLP for Compensation and Reimbursement of Expenses as Attorneys for the Official Committee of Unsecured Creditors [Dkt. # 723]; (3) Joint Objection of Debtor and Official Committee of Unsecured Creditors to the First and Final Application of Cooley LLP for Compensation and Reimbursement of Expenses as Attorneys for the Official Committee of Unsecured Creditors ("Joint Objection") [Dkt. # 730]; Objection to First and Final Application of Cooley LLP for Compensation and Reimbursement of Expenses as Attorneys for the Official Committee of Unsecured Creditors ("UST Objection") [Dkt. # 734]; (5) Omnibus Reply to (I) Joint Objection of Debtor and Official Committee of Unsecured Creditors to First and Final Application of Cooley LLP for Compensation and Reimbursement of Expenses as Attorneys for the Official Committee of Unsecured Creditors; and (II) Objection of the United States Trustee to First and Final Application of Cooley LLP for Compensation and Reimbursement of Expenses as Attorneys for the Official Committee of Unsecured Creditors ("Omnibus Reply") [Dkt. # 740]; (6) Declaration of Brian W. Byun in Support of Omnibus Reply to (I) Joint Objection of Debtor and Official Committee of Unsecured Creditors to First and Final Application of Cooley LLP for Compensation and Reimbursement of Expenses as Attorneys for the Official Committee of Unsecured Creditors; and (II) Objection of the United States Trustee to First and Final Application of Cooley LLP for Compensation and Reimbursement of Expenses as Attorneys for the Official Committee of Unsecured Creditors [Dkt. # 741]; (7) Declaration of Allison M. Rego

A.  <u>Standard for Final Allowance of Attorneys Fees and Expenses</u>

Section 330(a)(1) permits the court to award "reasonable compensation" for "actual, necessary services" rendered by a trustee, examiner or properly employed professional person. 11 U.S.C. § 330(a)(1)(A).  Compensation may not be awarded for: (1) unnecessary duplication of services; or (2) services that were not: (i) reasonably likely to benefit the debtor's estate; or (ii) necessary to the administration of the case.  11 U.S.C. § 330(a)(4)(A)(i) & (ii).

In determining "reasonable compensation," the court must consider the nature, extent and value of the services, taking into account "all relevant factors," including: (1) time spent on the

in Support of Omnibus Reply to (I) Joint Objection of Debtor and Official Committee of Unsecured Creditors to First and Final Application of Cooley LLP for Compensation and Reimbursement of Expenses as Attorneys for the Official Committee of Unsecured Creditors; and (II) Objection of the United States Trustee to First and Final Application of Cooley LLP for Compensation and Reimbursement of Expenses as Attorneys for the Official Committee of Unsecured Creditors [Dkt. # 742]; (8) Declaration of Ali M.M. Mojdehi in Support of Omnibus Reply to (I) Joint Objection of Debtor and Official Committee of Unsecured Creditors to First and Final Application of Cooley LLP for Compensation and Reimbursement of Expenses as Attorneys for the Official Committee of Unsecured Creditors; and (II) Objection of the United States Trustee to First and Final Application of Cooley LLP for Compensation and Reimbursement of Expenses as Attorneys for the Official Committee of Unsecured Creditors [Dkt. # 743]; (9) Transcript of Proceedings [Dkt. # 765]; and (10) facts evident from documents filed in the case as reflected on the court's docket of which the court has taken judicial notice pursuant to F.R.Evid. 201(c)(1).  The court has given little weight, if any, to the following documents in making its determination:  (1) Declaration of Carl Dore, Jr. in Support of Omnibus Reply to (I) Joint Objection of Debtor and Official Committee of Unsecured Creditors to First and Final Application of Cooley LLP for Compensation and Reimbursement of Expenses as Attorneys for the Official Committee of Unsecured Creditors; and (II) Objection of the United States Trustee to First and Final Application of Cooley LLP for Compensation and Reimbursement of Expenses as Attorneys for the Official Committee of Unsecured Creditors [Dkt. # 744]; (2) Declaration of T. Todd Egland in Support of Omnibus Reply to (I) Joint Objection of Debtor and Official Committee of Unsecured Creditors to First and Final Application of Cooley LLP for Compensation and Reimbursement of Expenses as Attorneys for the Official Committee of Unsecured Creditors; and (II) Objection of the United States Trustee to First and Final Application of Cooley LLP for Compensation and Reimbursement of Expenses as Attorneys for the Official Committee of Unsecured Creditors [Dkt. # 745]; and (3) Request for Judicial Notice in Support of Omnibus Reply to (I) Joint Objection of Debtor and Official Committee of Unsecured Creditors to First and Final Application of Cooley LLP for Compensation and Reimbursement of Expenses as Attorneys for the Official Committee of Unsecured Creditors; and (II) Objection of the United States Trustee to First and Final Application of Cooley LLP for Compensation and Reimbursement of Expenses as Attorneys for the Official Committee of Unsecured Creditors [Dkt. # 746].

services (11 U.S.C. § 330(a)(3)(A)); (2) rates charged for the services (11 U.S.C. § 330(a)(3)(B)); (3) whether the services were: (i) necessary to the administration of the bankruptcy case; or (ii) beneficial at the time the services were rendered toward completion of the case (11 U.S.C. § 330(a)(3)(C)); (4) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue or task addressed (11 U.S.C. § 330(a)(3)(D)); (5) with respect to a professional person, whether the person is board certified or has otherwise demonstrated skill and experience in the bankruptcy field (11 U.S.C. § 330(a)(3)(E)); and (6) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in nonbankruptcy cases (11 U.S.C. § 330(a)(3)(F)).

The "lodestar" formula (under which the number of hours reasonably expended is multiplied by a reasonable hourly rate for the person providing the services) is the traditional standard for assessing an attorneys' fee application in bankruptcy.  See Law Offices of David A. Boone v. Berham-Burk (In re Eliapo), 468 F.3d 592, 598–99 (9th Cir. 2006); Yermakov v. Fitzsimmons (In re Yermakov), 718 F.2d 1465, 1471 (9th Cir. 1983).  A bankruptcy practitioner's compensation, including the hourly rate charged, must be commensurate with the compensation received by comparably skilled attorneys in other practice areas.  11 U.S.C. § 330(a)(3)(F); In re Fleming Cos., Inc., 304 B.R. 85, 93 (Bankr. D. Del. 2003).

B.  Cooley's Application

In the Application and Supplemental Declaration, Cooley seeks final allowance of $768,771.20 in attorneys' fees, plus $19,301.22 in expenses, for a total of $788,072.42, for the period of April 29, 2013 through December 10, 2014.  The court approved Cooley's employment on June 24, 2013, retroactive to April 29, 2013.  Cooley rendered a total of 1,303 hours of services to the estate between April 29, 2013 and August 26, 2014, according to the Application, billed at a blended hourly rate of $556.93.  The legal services rendered for which Cooley seeks compensation in the Application are documented by invoices, copies of which are included in Exhibit 3 to the declaration of Ali M.M. Mojdehi in support of the Application.  Cooley's invoices reflect the services performed by Cooley on behalf of the Committee by category of

service.  Within each category of service, the work performed is documented by (a) the date the

service was performed; (b) the attorney who performed the service; (c) a description of the task

performed; and (d) the time expended in performing the service recorded in increments of 1/10th

of an hour.  Each invoice contains a summary of the work performed by each Cooley attorney or

paralegal for the Committee and their respective hourly rates, together with a list of costs

advanced during the billing period. The court takes judicial notice that the hourly rates reflected

in each of the invoices are within the range of hourly rates charged by attorneys and paralegals

for similar legal services rendered in chapter 11 cases pending in the United States Bankruptcy

Court for the Central District of California.  There is no allegation nor evidence that, at any time

during its employment under § 1103, Cooley represented or held an interest adverse to the estate

with respect to the matters on which it was employed or was not disinterested.  See 11 U.S.C. §

328(c).

      C.  The Objections to Cooley's Application

      In their Joint Objection, Debtor and the Committee first complain that "[t]he fees sought

by Cooley are completely disproportionate to the size of the estate and the results (or lack

thereof) achieved."[4]  They argue that Cooley must establish, "[i]n addition to the factors outlined

in Sections 330(a)(3)(A)," that its services "made a 'substantial contribution' [to the] case;" and

further, that "[t]he measure of any 'substantial contribution' is the extent of the [actual] benefit to

the estate," citing Cellular 101, Inc. v. Channel Commc'n, Inc (In re Cellular 101, Inc.), 377 F.3d

1092, 1096 (9th Cir. 2004).[5]  Given this standard, Debtor and the Committee reason that all fees

and expenses sought by Cooley with respect to (a) Cooley's investigation and litigation of the

Mountain View/Arvin Project Area ("MVA Project"); (b) the adversary proceeding against

Bruce A Berwager ("Berwager") and David E. Hoyt ("Hoyt") (the "Berwager and Hoyt

Adversary"); and (c) Cooley's work formulating a disclosure statement and proposed plan should

be disallowed entirely because the "substantial contribution" threshold has not been met.

---

[4] Joint Objection, 1:10-11.

[5] Id. at 4:17-22.

Cooley's fees with respect to hours expended on the MVA Project and developing a disclosure

statement and plan are also attacked by the UST.

      1.   *A Determination of Reasonable Compensation Under § 330(a)(3) Does Not Hinge on a Finding of a Substantial Contribution to the Case or Estate*

First, in seeking to bootstrap a "substantial contribution" requirement to § 330(a), Debtor

and the Committee improperly conflate § 502(b)(1) with § 502(d)(3)(D) and § 502(d)(4),

apparently hoping to incorporate the best of each section while avoiding their respective

limitations.  The Committee was appointed by the United States trustee pursuant to § 1102(a)(1),

and the Committee elected to employ Cooley as its counsel pursuant to § 1103(a).  Cooley is

seeking compensation as former Committee counsel pursuant to § 503(b)(2) and § 330(a), not

either § 502(d)(3)(D) or § 502(d)(4).  Section 330(a) sets forth the applicable standard for

determining the allowance and payment of compensation to counsel employed under § 1103.  11

U.S.C. § 330(a)(1).

Section 330(a)(3)(C) permits compensation for services that are "necessary to the

administration of, or beneficial at the time at which the service was rendered toward completion

of, a case." 11 U.S.C. § 330(a)(3)(C).  The court may not allow compensation for unnecessary

duplication of services, or services that were neither reasonably likely to benefit the estate nor

necessary for its proper administration.  11 U.S.C. § 330(a)(4)(A).  By its terms, § 502(d)(3)(D)

does not apply to an official committee of unsecured creditors appointed under § 1102.[6]  Nor

does § 503(d)(4) apply to an attorney employed to represent a committee appointed under §

1102.[7]  Whether services were necessary to the administration of the case or beneficial to the

---

[6]  Section 503(b)(3)(D) is the standard applicable to the allowance of actual, necessary expenses incurred by "a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders, <u>other than a committee appointed under section 1102 of this title</u>, in making a substantial contribution in a case under chapter 9 or 11 of this title." 11 U.S.C. § 502(b)(3)(D) (emphasis added).

[7]  Section 503(b)(4) is the standard applicable to "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than

estate is determined, not in hindsight, but objectively with reference to the time the services were rendered.  11 U.S.C. § 330(a)(3)(A)&(C); In re Mednet, 251 B.R. 103, 108 (9th Cir. BAP 2000); In re Circle K Corp., 294 B.R. 111, 125 (Bankr. D Ariz. 2003).  Furthermore, § 330 does not require that the services result in a material benefit to the estate.  It need only be shown that the services were reasonably likely to benefit the estate at the time the services were rendered. Mednet, 251 B.R. at 108; Lobel & Opera v. U.S. Trustee (In re Auto Parts Club, Inc.), 211 B.R. 29, 33 (9th Cir. BAP 1997).

   2.  *The Objections Are Not Supported By Evidence to Overcome the Presumption That the Lodestar Represents a Reasonable Fee*

   While a bankruptcy court has a duty to review a fee application even in the absence of an objection, the court should not, "not without evidence to the contrary, . . . change the facts initially presented to it in an otherwise complete fee application . . [and] on its own, second guess counsel in deciding whether this conference or that phone call were necessary, whose participation was appropriate, what the market generally pays for the time and services of counsel and its staff or how it reimburses certain expenses."  Matter of Hunt's Health Care, Inc., 161 B.R. 971, 981 (Bankr. N.D. Ind. 1993).  As the court correctly observed in Hunt's Health Care:

> Without being presented with facts beyond those contained in an otherwise sufficient fee application, the court should not reduce an attorney's hourly rate or decide what is or is not to be characterized as overhead or how certain expenses are properly billed.  Neither should the court take the approach that, just because it frequently reviews a multitude of fee applications, it is somehow in a better position to determine the reasonableness of a requested fee than the market.  An attorney's customary billing practices are presumptively correct.  While they may not be dispositive, departing from them requires a reason and information which would warrant the conclusion that the presumption accorded to counsel's regular practice should not be followed.  Thus, the burden is on the objector "to establish a good reason why a lower rate is essential to access a 'reasonable attorney's fee.'"

---

in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant."  11 U.S.C. § 503(b)(4).

> A party objecting to a fee application may not do so based on the general proposition that the fee sought is simply too much.  It should go beyond this assertion to articulate a reason why and, if necessary, present evidence in support thereof. . .   The objector must, at some point, identify any allegedly improper, insufficient, or excessive entries and direct the court's attention to them.  The objector should also be able to identify a reason why the hourly rates involved and the time charged are not reasonable or why the market would place a lower value on counsel's labors and offer evidence supporting its position.

Id. at 982 (citations omitted).  Attorneys' fees should not be reduced based on "inarticulate and unsubstantiated dissatisfaction with the lawyers' efforts to economize on their time and expenses."  Matter of Cont'l Ill. Sec. Litig., 962 F.2d 566, 570 (7th Cir. 1992).

In short, once an applicant has documented the hours expended and submitted evidence in support of the hours worked, "there is a strong presumption that the lodestar represents a reasonable fee."  Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1993).  "The party opposing the fee application has a burden of rebuttal that requires submission of evidence challenging the hours charged or facts asserted" in the application.  Id. at 1397-98.  In this case, neither the Joint Objection nor the UST Objection is supported by a declaration or other evidence to support disallowance of the fees or expenses sought in the Application.

*3. Cooley Will Be Allowed the Final Compensation Sought for Legal Services Rendered in Conjunction With the MVA Project, Berwager and Hoyt Adversary, and the Formulation of a Disclosure Statement and Proposed Plan*

a. MVA Project.  Debtor, Committee and the UST seek disallowance of $79,641 for 143 hours of legal services rendered to the estate in conjunction with the MVA Project.  Debtor and the Committee assert that Cooley's services in connection with the MVA Project "clearly did not result in a substantial contribution to the estate."[8]  In particular, Debtor and the Committee charge that "[t]he time spent on the MVA Project is unreasonable, the rate charged for such services is exorbitant in relation to the size of this case, and the services became unnecessary after the Sale Motion was withdrawn."[9]

---

[8] Joint Objection, 7:14.

[9] Id. at 7:11-13.

Cooley's Application reveals that Cooley represented the Committee successfully in opposing the Debtor's motion seeking to sell the estate's interest in the MVA Project to MK California, LLC ("MK"); and then, after Debtor's "withdrawal of the Sale Motion and at the Committee's direction," Cooley engaged in an extensive investigation of potential claims against MK's principal, J. Michael Kerr ("Kerr") and R. Terrence Budden, a principal of Compass Global Resources, LLC. Cooley's investigation included the discovery of documents, protracted litigation with respect to discovery, and ultimately a Rule 2004 examination of Kerr. Once the investigation was completed, Cooley drafted a complaint alleging claims against MK and Kerr related to the MVA Project transaction. The complaint and supporting documents were delivered by Cooley to successor counsel to the Committee upon Cooley's withdrawal.[10]

Cooley has established that the services were authorized by the Committee and reasonably calculated to benefit the estate at the time the services were rendered. The Debtor, Committee, and UST have not offered evidence to the contrary. Nor is there any evidence that "the rate charged for such services is exorbitant," as claimed by Debtor and the Committee.[11]

---

[10] Application, 8:9 – 9:14.

[11] Due to objections filed by Debtor and the UST, the order authorizing Cooley's employment by the Committee specifically states that "[t]he rights of all parties in interest to object to Cooley's hourly rates are reserved and may be raised at the time of Cooley's application for allowance of compensation and reimbursement of expenses." Order on Application to Authorize the Employment of Cooley LLP as Counsel to Official Committee of Unsecured Creditors, *Nunc Pro Tunc* to April 29, 2013 [Dkt. # 232], 2:4-6. However, the UST Objection does not challenge Cooley's hourly rates and the Joint Objection is not supported by any evidence to support a finding that Cooley's blended hourly rate of $556.93 is not within the range of prevailing hourly rates charged by firms in the Central District of California for similar services by lawyers of reasonably comparable skill, experience and reputation. Furthermore, Cooley's "associates' hours have been billed at a 10% discount and [Mojdehi's] hours have been billed at a 15% discount" in the Application. Declaration of Ali M.M. Mojdehi in Support of First and Final Application of Cooley LLP for Compensation and Reimbursement of Expenses as Attorneys for the Official Committee of Unsecured Creditors, [Dkt. # 723], at 3:12-13. "Cooley also has not charged for word processing services or secretarial overtime, although the firm bills its non-bankruptcy clients for such items." Id. 3:13-15. Finally, Cooley's blended hourly rate appears to be in line with the hourly rates charged by the Committee's current counsel, Loeb & Loeb LLP. The court takes judicial notice of the fact that "[t]he normal billing rates of Loeb's lawyers and paraprofessionals at the time of [its Employment] Application range from approximately $425.00

The fact that the adversary proceeding was not filed before Cooley's withdrawal as counsel for the Committee does not prevent Cooley from being reasonably compensated for actual and necessary services rendered to the Committee for investigating and pursuing the claims.

b. Berwager and Hoyt Adversary. Debtor and the Committee seek disallowance of $13,200 for 23.7 hours of legal services rendered to the estate in conjunction with the Berwager and Hoyt Adversary. Debtor and the Committee reason that "Cooley's time . . . did not make a substantial contribution to the estate because Cooley withdrew as counsel before the matters were fully adjudicated."[12] Neither Debtor nor the Committee appear to dispute the fact that Cooley actually rendered the legal services and advanced the costs itemized in the Application to investigate the Committee's potential claims against Berwager and Hoyt, made demands on counsel for Berwager and Hoyt for documents and information, prepared and filed an adversary proceeding against Berwager and Hoyt, and opposed their efforts to dismiss the adversary proceeding for lack of proper service and failure to state a claim.[13] Nor do Debtor or the Committee dispute the fact that the Committee is still pursuing the adversary proceeding which remains pending before the court.

Cooley has established that the services rendered with respect to the Berwager and Hoyt Adversary were reasonably calculated to benefit the estate at the time the services were rendered.

to $800.00 per hour for partners, and $315 per hour for paraprofessionals" and that "Loeb has agreed to cap its rates for partners who will work on this matter at $675.00 during the pendency of this case." Declaration of Bernard R. Given, II in Support of Application of Official Committee of Creditors Holding Unsecured Claims to Retain Loeb & Loeb LLP [Dkt. # 633], 4:16-19. The court also takes judicial notice of the First Interim Fee Application of Loeb & Loeb LLP, Counsel for the Official Committee of Creditors Holding Unsecured Claims, Seeking Allowance and Payment of Compensation and Reimbursement of Expenses Under 11 U.S.C. §§ 330 and 331 for the Period From August 13, 2014 Through October 31, 2014 [Dkt. # 752] filed on December 8, 2014, in which Loeb seeks an interim allowance and payment of $89,601.00 in fees, plus $810.08 in expenses, for a total of $90,411.08, for 151.8 hours of services rendered at a blended hourly rate of approximately $596.00 during the two and one-half month period between August 13, 2014 and October 31, 2014. No objection was filed to Loeb's interim application, and the fees and expenses sought were allowed at a hearing on January 7, 2015.

[12] Joint Objection, 7:26-28.

[13] Application, 10:20 – 11:12.

The court rejects the assertion in the Joint Objection that Cooley's compensation should be contingent on a successful outcome of the litigation.  A final adjudication in favor of the Committee of all claims against Berwager and Hoyt in the adversary proceeding is not a condition to allowing Cooley reasonable compensation for actual and necessary services rendered to the Committee in pursuing the claims prior to its withdrawal as counsel for the Committee.

       c. <u>Plan and Disclosure Statement</u>.  Debtor, Committee and UST seek disallowance of $191,974 for 344.7 hours of legal services rendered in conjunction with Cooley's efforts to formulate, draft, and file a disclosure statement and proposed plan of reorganization.  In the Joint Objection, Debtor and the Committee point out that "Loeb billed $43,656.00 to negotiate, prepare, and file the Joint Plan and Disclosure Statement (and the attendant Disclosure Statement Hearing),"[14] and argue that "Cooley['s] efforts were largely duplicative of efforts of others and thus do not constitute 'substantial contributions.'"[15]  Debtor and the Committee further argue that "[e]ven if they had been consummated, almost $200,000 to prepare, and not even confirm, a Plan for a 4 million dollar estate exceeds all bounds of reasonableness."[16]

       In its reply, Cooley points out that the Application, in fact, seeks "reimbursement of 315.5 hours of work constituting fees of $137,801.40 for time relating to plan and disclosure statement matters," divided as follows:

> $82,514.70 (approximately) was expended in negotiating, drafting and revising the plan and disclosure statement that . . . a majority of the Committee, in number and amount of claims held, voted to pursue but later, a majority of the Committee in number directed not to be filed; [and]

> $55,286.70 (approximately) was expended analyzing, negotiating, and objecting to the adequacy of disclosure as to the plans and disclosure statements the Debtor proposed after the Committee determined not to file its plan as well as analysis of

---

[14]  Joint Objection, 8:13-15.

[15]  <u>Id.</u> at 9:2-3.

[16]  <u>Id.</u> at 8:11-13.

the plan prepared by counsel for Baker Hughes/Scientific Drilling/Schlumberger that was later proposed to be filed by the Committee . . . .[17]

Neither the Joint Objection nor the UST Objection identifies any specific task performed by Cooley with respect to formulation of a disclosure statement and plan that was either not authorized by the Committee or not calculated to lead to a benefit to the estate at the time the work was performed.

At the hearing on December 10, 2014, Debtor's counsel conceded that Cooley's contributions resulted in a disclosure statement and plan that formed the basis of the disclosure statement ultimately approved and the consensual plan that followed, stating:

> [W]hile they . . . didn't file the disclosure statement, they provided a draft which provided the basis for the first amended disclosure statement and first amended disclosure statement which the Court ultimately approved. And it was the approval of the disclosure statement that changed the playing field and ultimately resulted in a consensual plan. That's all true.[18]

It is undisputed that the case has been litigious. Debtor's counsel was also asked whether the Debtor was suggesting that Cooley "ran up the fees for the past year and a half and created litigation that caused a division among members of the Committee and delayed an effective reorganization in the case?"[19] In response, Debtor's counsel stated:

> [I]t's my belief that [Cooley] acted in good faith to help seek a resolution and a reorganization of the case under very difficult circumstances. . . We think that the overall fees are high in light of the size of the case, but it doesn't have anything to do with good faith or the fact that they weren't trying to facilitate a reorganization"[20]

In sum, the objecting parties seek to curb Cooley's final fees and expenses because they believe that the amount sought is simply too much. As previously stated, "[a] party objecting to

---

[17] Omnibus Reply, 11:12-25.

[18] Transcript of Hearing Re: First and Final Application of Cooley, LLP for Compensation and Reimbursement of Expenses as Attorneys for the Official Committee of Unsecured Creditors [Dkt. # 765] ("Transcript"), 2:9-15.

[19] Id. at 14:9-13.

[20] Id. at 14:14-17.

a fee application may not do so based on the general proposition that the fee sought is simply too much." Hunt's Health Care, 161 B.R. at 982.  The Joint Objection and UST Objection fail to point to any specific instances of allegedly duplicative, unnecessary, or insufficient work, nor is there evidence that Cooley's services, at the time rendered, were not reasonably calculated to lead to a benefit to the estate.

*4. Cooley is Entitled to the Final Compensation Requested for Attending Court Hearings and Depositions and the Travel Time Associated Therewith*

Debtor and the Committee object to $53,368.20 in fees for 73.3 hours of legal services rendered by Cooley "related to meetings and preparation for and attendance of hearings,"[21] again arguing that Cooley has not demonstrated that such work resulted in a "substantial contribution to the estate."[22]

"There is no consensus among courts about what hourly rate should be allowed for professional's travel time under § 330." Thomas v. Namba (In re Thomas), 2009 WL 7751299, *9 (9th Cir. BAP 2009), aff'd, 474 Fed.Appx. 500 (9th Cir. 2012).  "[W]hether travel time is to be compensated at a full or partial rate should be evaluated 'not as to whether such time was productive, but whether it was reasonable and necessary.'"  Id.  Four of the challenged time entries relate to time spent by Cooley on behalf of the Committee attending depositions, and traveling to and from the depositions.  Cooley's Omnibus Reply points out that all but one of the remaining time entries challenged in the Joint Objection relate "to travel and attendance at hearings before the Hon. Robin Riblet (Ret.) who did not allow for telephonic appearances."[23] The Committee knew that Cooley's offices were in San Diego at the time it sought approval of Cooley's employment as counsel for the Committee.  There is no evidence that Cooley was not authorized by the Committee to either attend the depositions identified in the challenged time entries or to travel to and from each such deposition.  Given the inability to appear

---

[21] Joint Objection, 9:13.

[22] Id. at 10:9.

[23] Omnibus Reply, 13:15-16.

telephonically, Cooley had no option but to travel from San Diego to Santa Barbara to properly represent the Committee to attend hearings in the case.  There is no evidence that Cooley had the ability to bill other clients during the time Cooley was travelling to and from Santa Barbara for hearings or elsewhere for depositions.  Under the circumstances, the court concludes that Cooley's time attending depositions and hearings, and the travel time associated therewith, was reasonable and necessary and compensable at its full hourly rate.

### 5. Cooley's De-Lumped Time Entries are Compensable

Debtor and the Committee identify 46 instances of "lumping" in Cooley's Application with respect to its request for $118,806.22 in fees for 245.9 hours of legal services rendered on various tasks for the Committee.  They seek a blanket 30% reduction of the compensation sought by Cooley for such services "due to the amount of Cooley's request for compensation and the size of the estate."[24]

"Lumping services in a single billing entry in a fee application is 'universally disapproved' by bankruptcy courts."  Thomas, 2009 WL 7751299, *5.  "When services are lumped together, the bankruptcy court is prevented from determining the necessity of each service and 'from fairly evaluating whether individual tasks were expeditiously performed within a reasonable period of time.'"  Id.  "When fee applications are submitted with a portion or all of the requested fees based on lumped entries, courts may reduce, rather than disallow, compensation."  Id. at *6.

Here, Cooley in Exhibit 1 of its Omnibus Reply sought to "de-lump" each of the time entries challenged in the Joint Objection.  The time entries, as restated in Exhibit 1, de-lump the tasks undertaken and allocate the time spent on each task in increments of 1/10 of an hour.  Some of the time entries in Exhibit 1 are not de-lumped, but are identified as a "single task" or "closely related tasks."  The time entries, as restated in Exhibit 1, are sufficient for the court to determine the nature of the task performed and the necessity of the work undertaken, and to evaluate whether the task was performed within a reasonable period of time.

---

[24] Joint Objection, 10:22-23.

*6. There is No Evidence That Legal Services Performed by Cooley Were Not Authorized by the Committee*

Debtor and the Committee object to the allowance and payment of fees for legal services rendered by Cooley to perform tasks "not required or authorized by the Committee."[25]  Services must be authorized to be compensable.  See Mednet, 251 B.R. at 108.  However, the Joint Objection does not disclose the specific legal services rendered by Cooley that ostensibly were unauthorized nor is the Joint Objection supported by evidence that any of the legal services performed by Cooley were not, in fact, authorized by the Committee.

D.  Cooley is Entitled to Reasonable Attorneys' Fees and Costs Incurred in Defending the Application.

In its Supplemental Declaration, Cooley seeks an additional award of $57,393.80 in attorneys' fees for 113.40 hours of legal services rendered at a blended hourly rate of $506.12 between November 4, 2014 and December 10, 2014, in connection with preparation of the Application, responding to the Joint Objection and the UST Objection, and attending the hearing on the Application and objections thereto.[26]  The Committee objects "to the over 50 hours spent by several attorneys at Cooley in the preparation of the Reply and attending the hearing on the Application."[27]  The Committee further objects "to the over $3,000 in Research Database and Document retrieval expenses."[28]

In the Ninth Circuit a bankruptcy court may award compensation for time spent and expenses incurred in successfully litigating objections to a fee application, provided the applicant demonstrates that: (1) the services rendered satisfy the requirements of § 330(a)(4)(A); and (2) the case exemplifies a "set of circumstances" that made the time spent and expenses incurred in

---

[25] Id. at 13:25-26.

[26] Supplemental Declaration, 3:9-14.

[27] Opposition of the Official Committee of Creditors Holding Unsecured Claims to Supplemental Fees Requested by Cooley LLP ("Supplemental Opposition"), 2:11-12.

[28] Id. at 2:14-15.

the litigation "necessary" under § 330(a)(1).  Smith v. Edwards & Hale, Ltd. (In re Smith), 317 F.3d 918, 928 (9th Cir. 2002) (abrogated on other grounds by Lamie v. United States Trustee, 540 U.S. 526, 531–39 (2004)).[29]

In the Application, Cooley included a request for an estimated $25,000 in fees and expenses "to be incurred in connection with the preparation of [the Application] and litigation and hearing thereon."[30]  At the hearing on December 10, 2014, the court gave Cooley an opportunity to file a supplemental declaration setting "forth an itemization of fees and expenses incurred to support [its] claim for a $25,000 estimate of fees."[31]  The amount now sought is more than twice the estimate contained in the Application.

According to Exhibit 1 to the Supplemental Declaration, the cost of preparing, filing and serving the Application alone exceeded $19,000 – 41.5 hours of legal services at a cost of $19,390.90.  Preparing for and attending the hearing on the Application required another 12.8 hours of legal services at a cost of $9,047.60.  The remaining 59.1 hours were spent by Cooley researching, preparing, filing and serving the Omnibus Reply at a cost of $28,955.30.  Incredibly, Cooley spent 33% more time replying to the Joint Objection and UST Objection than it did preparing and filing its final fee application.  As previously stated, the court gave little weight to the bulk of the documentation filed in support of the Omnibus Reply.[32]

Three Cooley attorneys combined to spend 59.1 hours between November 30, 2014 and December 5, 2014, analyzing the objections and drafting, filing and serving the Omnibus Reply thereto, averaging 9.85 hours per day on the task over a six-day period.  The reasonableness of the time expended is an integral component of the lodestar analysis.  In this case, the extravagant

---

[29] The Supreme Court will soon rectify a split between the circuits on the issue of whether § 330(a) authorizes compensation for the costs professionals bear to defend their fee applications.  See ASARCO, L.L.C. v. Jordan Hyden Womble Culbreth & Holzer, P.C. (In re ASARCO, L.L.C.), 751 F.3d 291, 299 (5th Cir. 2014), cert. granted, Baker Botts, L.L.P. v. ASARCO, L.L.C., 135 S.Ct. 44 (2014).

[30] See footnote # 1, supra.

[31] Transcript, 32:18-19.

[32] See footnote # 2, supra.

expenditure of time devoted to the Omnibus Reply exceeds the amount reasonably necessary given the complexity of the issues raised in the Joint Objection and UST Objection. Furthermore, the court declines to compensate Cooley for work performed in conjunction with the Omnibus Reply to "de-lump" the time entries challenged in the Joint Objection. This was work Cooley should have performed, but failed to do so, in preparation of its final fee application. The Committee's objection was meritorious insofar as it pointed out this deficiency. While the court ultimately overruled the Committee's objection and allowed the compensation sought based on the information belatedly provided by Cooley, the court will not reward Cooley by allowing further compensation for work performed to correct a deficiency in its original application. Accordingly, the court reduces by 43.1 the number of hours which reasonably should have been expended by Cooley in connection with the Omnibus Reply. Cooley will be allowed $8,097.92 for 16.0 hours, at a blended hourly rate of $506.12, as compensation for legal services rendered to perform this task.

     With respect to Cooley's request for reimbursement of $3,028.35 in expenses incurred for "Research Database / Document Retrieval," the court assumes that the expense was incurred for computer assisted legal research but the Supplemental Declaration does not provide the court with any explanation of the cost nor concrete documentation establishing the necessity of the expense. Applicant has the burden to establish that an expense was actually and necessarily incurred. In re Gillett Holdings, Inc., 137 B.R. 462, 471 (Bankr. D. Colo. 1992). A reimbursable expense is one that is actually incurred and required to accomplish properly a task for which the professional was employed. See In re Williams, 102 B.R. 197, 199 (Bankr. N.D. Cal. 1989) ("[A]n expense is not 'actual,' and therefore not reimbursable under section 330(a)(2), to the extent that it is based on any sort of guesswork, formula, or pro rata allocation."); In re Convent Guardian Corp., 103 B.R. 937, 939 (Bankr.N.D. Ill. 1989) ("An expense is necessary if it was included because it was reasonably needed to accomplish the proper representation of the client.").

     "Lexis and Westlaw expenses may be compensable where they are both necessary and attributable to a particular client." Gillett Holdings, 137 B.R. at 473. "Ideally, the billing

statements should indicate the date, the person conducting the search, the length of the search, as well as providing evidence of the necessity for the use of the service." Id.  See In re Fibermark, Inc., 349 B.R. 385, 400 (Bankr. D. Vt. 2006) (Computer assisted legal research (CALR) is reimbursable, "provided the applicant: (1) demonstrates that the use charges incurred were reasonable and necessary (which necessarily includes a description of the research topic and the length of time spent on each topic); (2) affirms that the applicant bills its non-bankruptcy clients for CALR use charges, including the rate at which it bills its non-bankruptcy clients; and (3) certifies the invoiced cost from the vendor.").  In its Application, Cooley states that "computer-aided research [is] billed at actual cost."[33]  However, the Supplemental Declaration contains little, if any, factual information that would assist the court in divining what portion, if any, of the amount sought for "Research Database / Document Retrieval" was necessary to a proper reply to the Joint Objection or UST Objection.  Furthermore, "[t]he purpose of computer research is to cut down the amount of time necessary to research a particular issue, not to increase the costs." In re Wildman, 72 B.R. 700, 732 (Bankr. N.D. Ill. 1987).  This purpose does not appear to have been served given the time spent on the Omnibus Reply and the fees sought therefor.  Accordingly, the Committee's objection to allowance of Cooley's request for reimbursement of $3,028.35 in expenses incurred for "Research Database / Document Retrieval" is sustained.

In sum, the court will allow Cooley reasonable attorneys' fees of $36,536.42, plus expenses of $962.13, incurred in preparing its Application and defending its Application against the objections of the Debtor, Committee and UST finding that such services were not unnecessarily duplicative, were reasonably likely to benefit the estate, and aided in the administration of the case.  Cooley sought to discharge its fiduciary obligations to the Committee notwithstanding intense disagreement and increasing animosity among members of the Committee which ultimately resulted in the resignation of all but one member of the Committee and Cooley's withdrawal from representation.  Cooley's services on behalf of the Committee

---

[33] Application, 12:21.

until its withdrawal were not unnecessarily duplicative and were reasonably likely to benefit the estate or necessary to its proper administration.  Debtor's counsel acknowledged at the hearing that Cooley "acted in good faith to help seek a resolution and a reorganization of the case under very difficult circumstances . . . ."[34]  For these reasons, Cooley's defense of the objections to its final compensation request exemplifies a "set of circumstances" that made the time spent and expenses incurred in the litigation "necessary" under § 330(a)(1).

F. <u>Conclusion</u>.

Except as discussed above, Cooley's Application, as supplemented, satisfies the requirements of 11 U.S.C. § 330(a), FRBP 2016(a) and LBR 2016-1(c), and demonstrates that (a) Cooley rendered actual services to the estate that were necessary to the administration of, or beneficial at the time at which the services were rendered toward the completion of, the case, and that the compensation sought for such services is reasonable; and (b) the expenses incurred on behalf of the estate for which reimbursement is sought were actual and necessary.  Based on the foregoing, the court will allow as final fees the sum of $747,913.82 in reasonable attorneys' fees, plus $16,272.87 in expenses, for a total of $764,186.69.

A separate order will be entered consistent with this memorandum.

### 

Date: January 14, 2015

Peter H. Carroll
United States Bankruptcy Judge

---

[34] Transcript, 14:15-17.